JUDGE SCHEINDLIN    10 CIV 6031

Marcella Ballard
Joi Michelle Lakes
BAKER & MCKENZIE LLP
1114 Avenue of the Americas
New York, NY 10036
(T) 212 626 4100
(F) 212 310 1600
marcella.ballard@bakermckenzie.com

*Attorneys for Plaintiffs*
*ICQ (USA) Inc. and Istituto Italiano Sicurezza dei*
*Giocattoli S.r.l.*
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| ICQ (USA) Inc. and Istituto Italiano Sicurezza dei Giocattoli S.r.l.<br><br>Plaintiffs,<br><br>-against-<br><br>Modern Testing Services, LLC, MSR Laboratories, LLC, Hojun Park, and Mark Simonds,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |

Plaintiffs ICQ (USA) Inc. ("ICQ (USA)") and Istituto Italiano Sicurezza dei Giocattoli

S.r.l. ("IISG") (ICQ (USA) and IISG together, "ICQ") by their attorneys Baker & McKenzie

LLP, for their Complaint against defendant Modern Testing Services, LLC ("MTS"), MSR

Laboratories, LLC ("MSR"), Hojun Park and Mark Simonds (collectively "Defendants"), allege

as follows:

## NATURE OF THE ACTION

This is an action for preliminary and permanent injunctive relief and compensatory or

statutory damages by reason of Defendants' intentional acts in first appropriating, copying, and

then attempting to capitalize on ICQ's long standing and well-known registered and common

law trademarks for testing and analysis services for leading producers of toys and childhood

1

products, and for creating a false and misleading association between MTS and ICQ.

Defendant MTS is ICQ's direct competitor and markets its products and services using a mark that is nearly identical and confusingly similar to ICQ's federally registered and common law trademarks. Furthermore, MTS, in its promotional literature, falsely purports to be affiliated with ICQ, even including contact information for ICQ's owner and the Italian headquarters of ICQ's parent company on MTS's webpage and marketing brochures. MTS's actions deliberately mislead consumers in an attempt to capitalize on ICQ's success and goodwill within the field of toy safety and certification.

In this matter, ICQ brings causes of action for trademark infringement in violation of 15 U.S.C. § 1114, unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a), and trademark infringement and unfair competition in violation of the common law of the state of New York. Plaintiffs seek equitable relief and damages.

### JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, and pursuant to 28 U.S.C. §§ 1331 and 1338, and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

2.      This Court has personal jurisdiction over MTS and Park. MTS provides services and promotes those services throughout the United States and in this judicial district. Defendant Park and MTS have solicited sales and offered services at trade shows in this judicial district and have distributed promotional brochures and business cards bearing the infringing mark to advertise MTS's products and services in this judicial district. MTS also uses the infringing mark on its interactive website readily accessible to New York residents from which clients can download request forms and otherwise conduct business with MTS.

3.      This Court has jurisdiction over MSR and Simonds.  MSR provides services and promotes those services throughout the United States and in this judicial district.  Defendant Simonds and MSR share office space with MTS, shared a booth at a New York Toy Fair with MTS and have solicited sales and offered services at trade shows in this judicial district.

4.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendants are subject to personal jurisdiction in this district, and a substantial part of the events giving rise to ICQ's claims occurred in this district.

**THE PARTIES**

5.      Plaintiff IISG is a limited liability company of Italy, with a principal place of business at Via Europa, 28 I-22060 Cabiate (Como) Italy.  IISG is the sole owner of the stock of ICQ (USA).  IISG is a wholly owned subsidiary of ICQ Holding S.r.l. ("ICQ Holding"), which is ultimately owned by the Consonni Family.

6.      Plaintiff ICQ (USA) is Delaware Corporation and is a subsidiary of IISG.  ICQ (USA)'s principal place of business is 411 Caredean Drive, Suite E, Horsham, PA 19044.

7.      Defendant MTS is a limited liability corporation registered in Brockton, Massachusetts with its principal place of business at 244 Liberty Street, Unit#2, Brockton, MA 02301.

8.      Defendant Hojun Park is the Director, Operations for MTS, LLC located at 244 Liberty Street, Unit#2, Brockton, MA 02301, USA.  Defendant Park participated in a trade show in this judicial district where he handed out cards and brochures with the infringing logo described below and offered services.

9.     Defendant MSR Laboratories, LLC is a limited liability corporation registered in Brockton, Massacussetts with its principal place of business that is apparently the same as MTS, at 244 Liberty Street, Unit#1, Brockton, MA 02301.

10.    Defendant Mark Simonds is the CEO of MSR Laboratories, LLC located at 244 Liberty Street, Unit#1, Brockton, MA 02301.  Defendant Simonds shared a booth with MSR at a trade show in this district and jointly offered goods and services, including materials with the infringing logo described below.

## FACTS

**Plaintiff ICQ and its  Services**

11.     ICQ is one of the most respected independent quality certification and testing laboratories for textile shoes, clothing, children's toys, furniture, and other products in the international marketplace and the United States.

12.     Since 1995, ICQ has performed testing for major U.S. retailers including The Gap, Costco, Williams Sonoma, J Crew, Polo Ralph Lauren, Tommy Hilfiger, and Ann Taylor.

13.     ICQ is a pioneer and leader in the industry of promotion and evolution of quality safety standards for children's toys and childhood products and  provides certification and testing services from its laboratories in Philadelphia, Pennsylvania as well as from facilities located around the world that are owned and operated by ICQ (USA) and IISG's parent company ICQ Holding and its other subsidiaries.

**ICQ's Trademarks**

14.   ICQ uses a number of designs consisting of two concentric circular and semi-circular elements as trademarks to identify the goods and services it provides in the United States ("ICQ Circle Marks").

15.   ICQ owns a number of federal trademark registrations covering the ICQ Circle Marks.

16.   The ICQ Circle Mark covered by United States Registration No. 3,591,551 is a tire-like double circle design that is hollow on the top and shaded on the bottom.  The bottom portion of the outer circle is indented and appears to be incomplete.



17.   The ICQ Circle Mark covered by United States Registration No. 3,784,873 is a tire-like double circle design that is hollow on the top and shaded on the bottom.  The top portion of the circle is lightly shaded and contains the term SAFE TOYS.



18.   The ICQ Circle Mark covered by United States Registration No. 3,238,787 is a tire-like double circle design that is without shading.  The top portion of the double circle

contains the term SAFE TOYS and the innermost circle contains the phrase Istituto Italiano

Sicurezza Giocattoli and phrase Jouets De Securite Sicherheitsspielzeug Safetoys is written

around the bottom of the mark.



19.    The ICQ Circle Mark covered by United States Registration No. 3,778,302 is a

tire-like double circle design that has light shading on the top and dark shading on the bottom.

The top portion of the circle contains the term CHECKED SAFETY.



20.    A copy of ICQ's United States trademark registrations as well as a current

printout from the U.S. Patent and Trademark Office Database evidencing the current goods and

services and International Classes of covered under the ICQ Circle Mark registrations are

attached as **Exhibit A.**

21.    ICQ also owns a pending federal trademark application for the below mark, serial

number 77/109,496.  A copy of a current printout from the U.S. Patent and Trademark Office

Database evidencing the status of the application is attached as **Exhibit B.**

6



22.    ICQ has also developed common law rights in variations of the above described marks including, a mark consisting of a circle-like double circle design.  The top semi-circular portion is shaded blue, with the term ICQ appearing in white block letters, while the bottom semi-circular portion is shaded light blue.  Beneath the light blue semi-circular portion ICQ (USA)'s website address appears in black type, which appears to complete the outer-most circle.

23.    ICQ has marketed, advertised, attended tradeshows, and promoted its testing, inspection, and quality control services under its registered trademarks, which have come to mean and are understood to signify ICQ's products and services.  These marks are the means by which ICQ's products and services are distinguished from those of others in the same and related fields.

24.    ICQ uses the ICQ Circle Marks on its interactive website and uses the marks in interstate commerce.

**Defendant MTS and its Services**

25.    Defendant MTS also offers inspection and quality control services for toys and juvenile products and for textiles, among other services.

26.    Upon information and belief, MTS itself does not have a specific expertise in toy testing, and accordingly, does not have its own laboratories and instead relies upon third party laboratories to conduct tests.

**The Parties and The Prior Relationship**

27.     Prior to November 25, 2008, a joint venture agreement existed between ICQ Holding, the Consonni Family, and ICQ Holding's other subsidiaries (together, "ICQ Group") on the one hand, and MTS's parent company Easy Winner Corporation (located in the Cayman Islands), its subsidiaries as well as its owners, Mr. Byung Park and Ms. Yu Sil Park (together, "MTS Group"), on the other hand.

28.     The joint venture between the ICQ Group and the MTS Group was terminated by a Settlement Agreement ("Settlement Agreement") executed on November 25, 2008.

29.     Schedule 9 of the November 25, 2008 Settlement Agreement explicitly set forth ICQ Holding as the legitimate and exclusive owner of the ICQ Circle Marks and other ICQ trademarks and granted ICQ Holding the right to use and exploit the ICQ Circle Marks without limitation.  A copy of Schedule 9 to the Settlement Agreement is attached as **Exhibit C**.

30.     IISG's predecessor, ICQ Global Srl ("ICQ Global"), had also entered into a Marketing and Customer Service Agreement with MTS, Inc. (another MTS entity), executed on July 9, 2007.  ICQ Global terminated that agreement by letter dated June 10, 2008.

**Defendants' Infringing Activity**

31.     Despite the termination of the former relationship between the ICQ Group and the MTS Group and despite the explicit acknowledgement by the MTS Group that the ICQ Circle Marks belong to the ICQ Group alone, MTS is currently using a nearly identical and confusingly similar infringing circle mark ("MTS Infringing Circle Mark") to market and sell its products and services in a deliberate effort to confuse consumers and piggyback on the ICQ's reputation and goodwill.

8

32.   The MTS Infringing Circle Mark utilizes the same shape, lines, and in some cases, color shading and word placement as the federally registered ICQ Circle Marks.  A comparison of the registered and applied for ICQ Circle Marks and the MTS Infringing Circle Mark is depicted below:

| ICQ Circle Mark<br>U.S. Reg. No. 3,591,551 | MTS Infringing Circle Mark |
|---|---|
|  |  |
| ICQ Circle Mark<br>U.S. App. No. 77/109,496 | MTS Infringing Circle Mark |
|  |  |
| ICQ Circle Mark<br>U.S. Reg. No. 3,784,873 | MTS Infringing Circle Mark |
|  |  |
| ICQ Circle Mark<br>U.S. Reg. No. 3,238,787 | MTS Infringing Circle Mark |



33.     Like the common law ICQ Circle Mark, MTS's Infringing Circle Mark uses a tire-like circular design, contains a blue semi-circle at the top and light blue semi-circle at the bottom, places its three letter acronym, MTS, in white text at the top of the top of the circle and contains writing to complete the bottom portion of the outer circle.

34.     Upon information and belief, MTS uses its MTS Infringing Circle Mark on its analysis and test reports that are distributed to its consumers.

35.     Upon information and belief, MTS solicits and conducts business through its interactive U.S. website located at http://moderntestingservice.com/index.htm ("MTS Website").

36.     The MTS website displays the MTS Infringing Circle Mark, discusses its services, provides contact information and displays the cover of an MTS brochure, which also contains the MTS Infringing Circle Mark.  A true and correct copy of the front page of MTS's website is attached as **Exhibit D**.

37.     MTS also displays the MTS Infringing Circle Mark on various pages within the MTS website including the "About Us" page found at http://moderntestingservice.com/index_files/Page350.htm, which displays MTS's Infringing

Circle Mark and describes MTS's Mission & Philosophy.  A true and correct copy of the About Us page is attached as **Exhibit E.**

38.     MTS also displays the MTS Infringing Circle Mark on the "Scope of Services" page found at http://moderntestingservice.com/index_files/Page433.htm ("Scope of Services Page"), which provides the complete range of testing and client technical support services, including, product testing, inspection services, facility audit and assessment services.  A true and correct copy of the Scope of Services page is attached as **Exhibit F.**

39.     MTS also displays the MTS Infringing Circle Mark on the "Global Location" page found at http://moderntestingservice.com/index_files/Page777.htm, which displays a map of the continents on which MTS purports to have a network of facilities, and which provides links to MTS's purported network in Europe. A true and correct copy of the Global Location page is attached as **Exhibit G.**

40.     The link to the MTS's network in Europe leads to a page found at http://moderntestingservice.com/index_files/Page950.htm.  The Europe network page also displays the MTS Infringing Circle Mark and  provides contact information for Plaintiff IISG and its Managing Director Dr. Natale Consonni ("Consonni").  A true and correct copy of the Europe network page is attached as **Exhibit H.**

41.     Dr. Consonni is the principal owner and Chief Executive of plaintiffs IISG and ICQ (USA), their parent and subsidiaries.

42.     Dr. Consonni, IISG, and ICQ (USA) have no affiliation or association with MTS.

43.     MTS's inclusion of IISG and Dr. Consonni on its website falsely implies an affiliation between ICQ and  MTS.

**Defendants' Distribution of False and Misleading Marketing Materials**

44.     Representatives of MTS and MSR Laboratories attended a Toy Fair in New York City in February of 2010 where MTS and Park distributed brochures bearing the MTS Infringing Circle Mark and contact information for Dr. Consonni, thereby falsely implying an affiliation between ICQ and MTS.  A copy of the brochure is attached as **Exhibit H**.

45.     MSR and Simonds shared a booth with MTS at the Toy Fair in New York in 2010 and answered questions and offered services along with MTS.  MSR shares the same office location in Brockton, Massachusetts with MTS.  Defendant Simonds participated in the Toy Fair with MTS and offered the infringing pamphlets to participants.

46.     Upon information and belief, Defendants plan to attend future conferences and trade fairs in New York and will continue to display the MTS Infringing Circle Mark and mislead clients by purporting to be an affiliate of ICQ.

47.     Defendants' infringing use of  nearly identical, confusingly similar MTS Infringing Circle Mark is a willful attempt to imply an affiliation with ICQ and the ICQ Group, mislead and confuse consumers into believing that ICQ and MTS are related companies and thus capitalize on ICQ's goodwill.

48.     Defendants' use of the MTS Infringing Circle Mark has already led to actual confusion among ICQ's consumers who mistakenly believed that MTS was somehow affiliated to ICQ because of Defendants' use of the Infringing Circle Mark.

49.    Defendants' use of its Infringing Circle Mark has caused, and will continue to cause, ICQ irreparable harm, loss of goodwill, and loss of reputation.

## FIRST CLAIM FOR RELIEF:
## TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

50.    Plaintiffs ICQ repeat and reallege the foregoing allegations of the complaint as if fully set forth herein.

51.    Because of the long, continuous, and exclusive use of the ICQ Circle Mark, it is arbitrary and has come to signify ICQ's services, in the public's mind, as deriving from a single source.

52.    Defendants' activities constitute use in interstate commerce.

53.    Defendants' activities are likely to cause consumer confusion, mistake, or deception, and are likely to mislead consumers and the public to believe that ICQ is the source of MTS's products and services or that ICQ has sponsored, authorized or licensed the infringing MTS products and services for sale in the United States.

54.    Defendants' activities have caused consumer confusion, mistake, or deception and are likely to cause consumer and the public to believe that ICQ is the source of MTS's products and services or that ICQ has sponsored, authorized or licensed the infringing MTS products and services for sale in the United States.

55.    Defendants' activities constitute willful and deliberate infringement of the ICQ Circle Marks, Registration Nos. 3,784,873, 3,591,551, 3,238,787, and 3,778,302,  in violation of 15 U.S.C. §1114.

56.     Defendants' infringement of ICQ's federally registered trademarks will continue unless enjoined by the Court.

57.     ICQ has no adequate remedy at law, and has suffered and will continue to suffer irreparable harm to its business, reputation, and goodwill unless Defendants' unlawful conduct is enjoined by this Court.

58.     ICQ is entitled to a preliminary and permanent injunction prohibiting Defendants from marketing, selling, providing and/or distributing their products and services under the MTS Infringing Circle Mark.

59.     ICQ is also entitled to recover from Defendants all damages that ICQ has and will sustain, and all gains, profits, and advantages obtained by MTS as a result of its infringing acts alleged above in an amount not yet known, the lost goodwill to the ICQ Circle Mark and brand equity in that mark, and the costs of this action pursuant to 15 U.S.C. §1117(a), and enhanced damages.

## SECOND CLAIM FOR RELIEF:
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(A)

60.     Plaintiffs ICQ repeat and reallege the foregoing allegations of the Complaint as if fully set forth herein.

61.     The MTS Infringing Circle Mark is nearly identical and confusingly similar to the inherently distinctive ICQ Circle Marks and the resulting sale of MTS products and services under a nearly identical mark constitutes false designation of origin in violation of Section 43(a)(1) of the Lanham Act, 15 U.S.C. §1125(a)(1).

62.     Defendants list contact information for ICQ's owner Dr. Consonni and plaintiff IISG and purports that they are a part of MTS's global network, in MTS's marketing brochures and on MTS's Global Location webpage, located at http://moderntestingservice.com/index_files/Page950.htm.

63.     Through Defendants' use of the Infringing Circle Mark and listing of Dr. Consonni and IISG in MTS's brochures and websites, Defendants falsely imply an association between ICQ and MTS.

64.     MTS's websites and brochures are both false and misleading representations of fact that are likely to cause confusion or mistake, or to deceive the relevant purchasing public as to the origin or sponsorship of the MTS products and services.

65.     Defendants' infringing actions will continue unless enjoined by the Court.

66.     ICQ has no adequate remedy at law, and has suffered and will suffer irreparable harm to its business, reputation, and goodwill unless Defendants' unlawful conduct is enjoined by this Court.

67.     ICQ is entitled to a preliminary and permanent injunction prohibiting Defendants from marketing, selling, providing and/or distributing products and services under the MTS Infringing Circle Mark, and to recover from Defendants all damages that ICQ has and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, the lost goodwill to the ICQ Circle Mark registrations and common law marks, and brand equity in those marks, and the cost of this action pursuant to 15 U.S.C. §1117(a).

68.     As this is an exceptional case given Defendants' willful acts, pursuant to 15 U.S.C. §1117(a), ICQ is further entitled to three times the amount of the above profits or damages, whichever is greater, and attorney's fees, and costs.

### THIRD CLAIM FOR RELIEF:
### COMMON LAW TRADEMARK INFRINGEMENT
### AND UNFAIR COMPETITION

69.     Plaintiffs ICQ repeat and reallege the foregoing allegations of the Complaint as if fully set forth herein.

70.     ICQ possesses common law rights in its ICQ Circle Marks, which appear on ICQ's website, are inherently distinctive, and act as common law trademarks signifying ICQ's goods and services.

71.     Defendants' adoption and use of the MTS Infringing Circle Mark (depicted below) constitutes trademark infringement and unfair competition in violation of the common law of the State of New York



72.     Defendants' activities are designed with the intent to mislead and/or deceive the public into believing that MTS is affiliated with, authorized, endorsed, sponsored, and/or sanctioned by ICQ, or is connected with or associated in some way with ICQ, which it is not.

73.     Defendants' acts, complained of herein, have damaged ICQ, and will, unless restrained, further impair if not destroy, the value of the ICQ Circle Marks and the goodwill associated therewith.

74.     Defendants have engaged and continue to engage in the activity knowingly and willfully.

75.     Defendants' acts of common law trademark infringement and unfair competition, unless enjoined by this Court, will continue to cause ICQ to sustain irreparable damage, loss and injury for which ICQ has no adequate remedy at law.

76.     As a result of the foregoing, ICQ is entitled to recover from Defendants all damages that ICQ has and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of its infringing acts alleged above in an amount not yet known, the lost goodwill to the ICQ Circle Marks, and brand equity in those marks, and the costs of this action.

## PRAYER FOR RELIEF

WHEREFORE, ICQ respectfully requests that judgment be entered:

A.     Preliminarily and permanently enjoining Defendants, their affiliates, subsidiaries, parents and their respective officers, agents, servants and employees, and all persons in active concert or participation with them, and mandating that Defendants forever cease and desist in the future, anywhere in the world, from:

i.      engaging in trademark infringement, false designation of origin, unfair competition and other unlawful activities with respect to the MTS Infringing Circle Marks pursuant to the Lanham Act, 15 U.S.C. §1051 et seq.;

ii.     engaging in false association with respect the MTS services and/or violating Lanham Act § 43(a), which relief includes but is not limited to removal of all

false and/or misleading statement to remedy the effects of MTS's false and/or misleading representations.

B.      Requiring Defendants to file with this court and to serve on ICQ within thirty days after entry of the injunction a report in writing under oath setting forth in detail the manner and form in which MTS has complied with the injunction.

C.      Directing Defendants to pay to ICQ actual damages, additional profits and the costs of this action under 15 U.S.C. §1117(a) or otherwise;

D.      Entering judgment that Defendants' trademark infringement has been willful;

E.      Awarding ICQ enhanced damages, actual damages, Defendants' profits and the costs of this action;

F.      Awarding ICQ damages for the loss of brand equity in the goodwill of the ICQ Circle Marks;

G.      Awarding ICQ damages, punitive or enhanced damages and an injunction under New York common law and statutory law;

H.      Awarding ICQ its reasonable attorneys' fees and costs; and

I.      Awarding such other relief as the Court deems just and proper.

## JURY DEMAND

ICQ demands a trial by jury of all claims.


Dated: New York, New York                    BAKER & McKENZIE LLP
       August 11, 2010

By:_____
    Marcella Ballard
    Joi Michelle Lakes
    1114 Avenue of the Americas
    New York, NY 10036
    (T) 212 626 4100
    (F) 212 310 1600
    marcella.ballard@bakermckenzie.com

*Attorneys for Plaintiffs*
*ICQ (USA) Inc. and Istituto Italiano*
*Sicurezza dei Giocattoli S.r.l.*